MR. GREENBERG. Good morning, Your Honors. Jeffrey H. Greenberg for Dr. Jason Theodosakis, often known as Dr. Theo in the world of nutritional supplements. I'm going to start out by talking to you about whether or not there is a statute of limitations that's applicable to Lanham Act claims. Generally speaking, latches is the time bar to equitable use of equitable claims, and the statute of limitations is the time bar to actions at law. The statute of limitations is a really simple defense. You have a cruel of the cause of action and the passage of time. That's it. It doesn't ---- JUSTICE KAGAN Mr. Greenberg, the difficulty I've got, whether or not you're technically right or technically wrong, this Court has certainly said that the statute of limitations does apply in a Lanham Act case. MR. GREENBERG. Well, Your Honor ---- JUSTICE KAGAN I mean, you may be preserving an argument that has some merit or maybe not, but I don't know how you think we can undo our own law. MR. GREENBERG. Well, I want to address that question. I think, Your Honor, the Act, you have a rule of law that stands for the proposition that if this Court in one of its panel holds, for example, that there is a statute of limitations applicable by express holding as opposed to dicta, that another panel cannot overturn that decision. But that didn't happen. And I don't think there's any question that ---- and I've gone through every single Ninth Circuit decision that applied the statute of limitations to Lanham Act claims. And there is no discussion in any of those cases of whether or not there is a statute of limitations applicable to Lanham Act claims. It's not there. It's not reasonable to say that this Court has decided whether or not there is a statute of limitations defense to a Lanham Act claim. It's fair to say that litigants have allowed district court judges to rule on that question, and appellate by the arguments that were argued below and reach their decisions. It's also very fair to say that this circuit recognizes in Danjack and Yarrow that laches is the applicable defense. Why talk about claims that are 19 and 30 years old in Danjack when the longest statute of limitations known to man is six years for breach of a contract, and certainly usually three years or four years for intellectual property violations, no reason except there is no statute of limitations applicable. Of course, that's just negotiating price, even if we were just to look at the statute of limitations in your case, because it's six years. I mean, excuse me, if we were just to look at laches, I mean, the delay is six years. On any wild reading of statute of limitations, it would be three. Well, I agree, Your Honor. It would be three, but I'm not sure I understand your point. My point is it doesn't matter really whether it's 32 years or six. You're way in excess of the statute of limitations for purposes of presumptive laches analysis. That's true, Your Honor, for purposes of presumptive laches analysis. But then why go into the presumptive laches analysis and the factors of whether there was, in fact, prejudice, whether there was a reasonable excuse for the delay, or whether there was willful misconduct that obviates the ability to use the defense in the first place under DANJAC? Why talk about any of that if you've got more than three years and you have a statute of limitations, the end? It doesn't matter if you have the most meritorious claim in the world and the best excuses that ever existed. It just doesn't matter. And so the logic is that the DANJAC panel and the JARO panel understood, and the trial courts in those cases, which didn't rule on the statute of limitations and turned to laches, understood that under the Lanham Act, the statute, by its expressed language, tells us that the remedies are subject to principles of equity, both injunctive relief, the award of damages, and the right to an accounting. And Section 117A tells us that we have a unique situation. We have a situation under the Lanham Act where we're trying to deal with protecting the public from being ripped off by products that aren't what they claim to be, and where we're trying to protect the rights of the intellectual property owners from being basically stolen by fraudulent misconduct duping the public. And you can have situations where there is slight damage, you can have situations when there is little profit, and you can have the converse of both of those propositions. Mr. Greenberg, maybe I – and I obviously wasn't very clear in my question. I was trying to get you off of the statute of limitations. And the field that you wanted to play on. I mean, you want to play on the field of laches. I take it. Yes, Your Honor, I do. All right. So if we're playing on your field, my quick point was it's way over the statute of limitations, so you've got a presumptive laches delay situation. I finally understand your question, Your Honor, and I think I can answer my viewpoint on that. And you agree with me so far. I certainly do. Okay. So now the – all right. So now your question – my question is, why isn't there unreasonable delay even on the laches playing field, given that two years expired before the doctor ran into problems with his first counsel? And as the district court said, even after the offending labels were removed, there was still considerable delay. And if you add all that up, you've got a number of years without doing anything. And, Your Honor, the central thrust of the entire plaintiff's complaint and the plaintiff's oppositions below to the motions for summary judgment was, and still is, that laches is not available as a defense to a deliberate and willful infringer. Now, where do I get that from? In other words, you won't see anything in my brief to this Court that is trying to argue that Judge Collins did not have discretion to look at all the factors leading into the delay and come to the conclusion that absent willful misconduct, too much time passed. What do you mean by willful misconduct? That is to say, they knew they were infringing, or do you mean something more than that? I mean that they knew that their conduct was substantially likely to cause public confusion and cause a false association between their product and Dr. Theo. So you mean only that, in fact, they knew that they were infringing? And they knew that they were causing confusion in the public, and they knew that they were causing a false association. And the reason I say that... Isn't that just part of infringing? It is, Your Honor, and I'm just getting that standard from Danjack. I'm reading Danjack, and after it tells us that we are revisiting the issue of whether or not the willfulness exception applies and says that it hasn't been visited lately, the Court says, although we have not had occasion to apply this exception, we accept the party's invitation to adopt the definition of willful infringement that is used elsewhere in the Copyright Act, providing for the willfulness exception to latches. Just as for the willfulness augmentation of statutory copyright damages, the term willful refers to conduct that occurs, quote, with knowledge that the defendant's conduct constitutes copyright infringement. Okay? So with knowledge that the defendant's conduct constitutes false association, false endorsement, and in the decision below, Your Honors, notwithstanding our argument directly on that principle, quoting from this Court's decision in Danjack, the district court judge did not even address the interplay between the willfulness exception and his finding of the time delay portion of latches. Well, it's basically said, look, even if there was willfulness, it's stocked as of the third labeling sequence, which would have been in 19 19 In 2001. Well, Your Honor. And there's no And the district judge concluded there was no reasonable explanation for the delaying after that. Well, Your Honor, but the point is that if you have a claim that accrues in 1997 and the defendant is acquitted, and it would be barred by latches under the standards of unreasonable delay, and then you don't have the availability of the latches defense at all. Wait a minute. Wait a minute. Suppose somebody willfully violates the 1919 and fixes it in 1921. You're telling us that cause of action is still available today? I'm telling you that theoretically, under the Lamb Act and the rulings of this Court, that yes, and under section 1117A. I'm telling you that you ought to reexamine that answer, because that's so implausible as to not pass the blush test. You know that there's going to be a limit at some point. But that limit rests in the trial court's discretion after he hears the evidence in this factual scenario of willfulness. And the record in this case is abundantly clear that there is much more than a legitimate question of fact as to whether the defendant's conduct was willful. And if they stopped in 2001 being willful, it doesn't mean that they escape the eye of the law for the conduct between 1997. If latches works, your client didn't move in 2001. Your client didn't move in 1997. Willfulness, let's take this supposition. Willfulness stops in 2001. Okay? Okay. And the tolling stops then, too. Well, I would say that the willfulness stops. I'm glad that they stopped ripping everybody off in 2001. But that doesn't mean they're not answerable for their conduct prior to 2001 if their conduct was deliberate and intentional. Your client could have waited to the year 2525 and bring the cause of action? Theoretically, yes. I'm saying that's the answer that doesn't pass the blush test. That cannot be right. Latches must have an equitable component that says there's too long. Something is too long. And your suggestion that willfulness permanently suspends latches just seems to me too implausible to pursue. Your Honor, I think that my answer to your observation, which has certainly passed through my head, is that under Section 1117, the trial judge is supposed to consider the willfulness of the misconduct, the damage done to the public, the damage done to the intellectual property holder, the length of the delay, which in Dan Jack was in some cases 30 years, and determine in equity what the proper result should be, which may be that I don't care how wrong the conduct was, I don't care how much the public was hurt, you waited 30 years, it's too late. But that comes after the presentation of evidence, and it doesn't come on summary judgment when there are material issues of fact as to the extent of the willfulness. You see, you're missing the point of Judge Clifton's query, which is, and the point of the district court's analysis, which was fine, assuming that there was willfulness. It stopped. And there was no explanation, reasonable explanation, for delay after that. Well, I think that the answer to that is that, number one, Judge Collins doesn't say most of what you just said. Judge Collins does not ever say willfulness doesn't apply for X, Y, Z, or Q. It's not that. Well, then forget what the district court did and just answer my question. Assuming they were willful beyond belief, such that there is not even a triable issue of fact about willfulness. I mean, they are true, genuine bad guys. All right? But they stopped. And there is nevertheless no reasonable explanation for delay after that. Now, what's wrong with that analysis? The thing that's wrong with that analysis is that if the conduct stopped in 2001 and the claim was filed in 2003 and there's no further prejudice to the wrongdoer because he's not doing wrong anymore and he's only being asked to be held accountable for what he did wrong during the wrongful period, it's the willfulness of the misconduct that obviates the ability to have the defense. And in Danjack, this Court says that the trial court should not resolve the equitable defense of latches until there's a fact about the factual determination where willfulness, naked infringement is alleged. It's right in the case. I understand that the hypothetical absurd situation could occur. And I would say that Danjack is as far out there as I can imagine, you know, 30 years. And, you know, I don't really understand how anyone thought they could win that case. But it was handled correctly. And McClory had an opportunity to put forth evidence to be considered on willfulness, and the Court in Danjack found that the evidence put forward on willfulness was insufficient to raise a genuine issue of material fact, could not in any circumstance meet the test of willfulness. You can't say that here. I mean, the book comes out, it's a bestseller, and three months later in March, the bottle comes out and looks just like the book cover, and there's a letter from the head of the company to Walgreens that says, we want this on the label because of its merchandising value. There is absolutely no question of intent. And I don't believe that you get out of your misconduct because you finally stop it. I heard on the news the other day that John Gotti, Jr. has, you know, convinced the jury that that's available as a defense, that he removed himself from the criminal enterprise so it doesn't matter, that everything he has is the fruit of, you know, killing people. That's the problem that you're in by not having filed within the statute of limitations. You then subject yourself to equitable considerations. I mean, that's the problem. And if somebody happens to stop what gives you the ability to file after the statute of limitations, I'm hard-pressed to understand what's inequitable about that. Well, I don't think there's anything inequitable about somebody stopping after the passage of the presumptive period, but I think there's something very inequitable about being able to get away with it as if you didn't do it just because you stopped when your conduct was deliberate and willful. Well, the whole point of latches is that it's too late. No matter how meritorious the claim is, it's too late. You've waited too long. Well, I also have to say that I find the application of latches, well, I understand I see it in the law, is problematic here in one sense because what you're after is a monetary recovery. And you can call it equitable because somehow it can be characterized as an accounting. But the thrust of your argument is to allow a monetary recovery which ordinary people, uneducated in the subtleties of the law, might be tempted to call damages without regard to statute of limitations. And I'm reluctant to push the latches analysis so far as to say, okay, there was bad conduct for a couple of years which excuses the statute of limitations. That conduct ceased. You can wait three or so years after that and bring a suit for monetary recovery because it's latches. That's too far for me. Well, Your Honor, I can only say that it seems clear to me from the prior precedent of this court that there is no escape hatch or time frame for someone that willfully and deliberately infringes. I'm not saying that Congress shouldn't pass a rule that says there should be, but this Court has never said there is. And it didn't say it in Danjack 30 years after the fact, and I don't see why it's going to say it now. And I've got a minute left, and I'm going to keep it. Okay. Thank you, Mr. Greenberg. Namkhan. May it please the Court. Excuse me. My name is Joel Namkhan, and I represent the defendants' appellees. And with me is Michael Liberti. Your Honors, I've listened to the argument just now, and it appears to me that the Court fully understands the argument set forth in our briefs. And I'm quite happy to rest on those briefs and to entertain any questions that you might have. Do you have any questions? Yeah. Could you turn that bottle so I can see the label? And then hold the book up. Okay. Thank you. I think your client might have lucked out. Well, Your Honor, may I address your skepticism about the label itself? Of course, it is undisputed in this case that all of the complaint of wrongdoing ceased in 2001. That's undisputed. And the plaintiff does not attempt to excuse his delay. He does not claim that it was reasonable, and he concedes for purposes of the appeal that it caused prejudice. And he concedes that the third set of labels, which occurred in 2001, in his words, in his opening brief at page 23, cleansed whatever wrongdoing there was. But even as to the first label, if you were to look at it, Your Honor, this label, this medicine, I guess I shouldn't call it that, this supplement, has a disclaimer at the back that says that the product is not endorsed. Yeah. I'm familiar with the record. Thank you. Unless the Court has any further questions, I will step down. Thank you. Okay. Mr. Greenberg, back to you. See how they – we practice wisdom in Arizona. I want to make clear that the record shows that at least through October of 2001, the offending label that was never recalled was on the shelves. I want to make clear that throughout that time period, the – And the lawsuit wasn't filed until June of the next year. 2003. Less than two years after the last offending act in October of 2001. And also I want to make clear that by the summer of 2001, the Walgreens catalog still was carrying the offending label. And now they weren't just saying, as featured in – well, are we talking about glucosamine or are we talking about the book, you know, PECO's product? Now they're saying Arthax-DS, glucosamine chondroitin double strength, as featured in the bestseller of the arthritis cure. That's worse. That's the spring of – summer of 2001, and that is worse than just trying to, you know, I guess play the legal asterisk claim that they're not really referring to the PECO's product here. They're just talking about glucosamine chondroitin. So I think it's important to understand that every time that this product is being sold, that somebody is taking it and they know it doesn't work because Dr. Thiel gave them the test results, that somebody is going to an anti-inflammatory or even heavier drug because they're not getting the benefit of the program. And I think that I probably have exhausted my explanation of why there is no time frame that stops the application of willful misconduct from trumping watches. Thank you, Mr. Greenberg. You're welcome, Your Honor. Appreciate your disposition. Thank you, counsel. The matter just argued will be submitted and the court will stand in recess for the day.
judges: Rymer, W. Fletcher, Clifton